UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*<br>ANGELA D SETZER, *bringing this action*<br>*on behalf of the United States of America* | ) ) ) ) | |
| c/o Hon. David L. Huber<br>United States Attorney<br>510 West Broadway<br>Louisville, Kentucky  40202 | ) ) ) ) ) | |
| and | ) ) | CIVIL ACTION NO. 3:04cv-458-$\cancel{S}$ H |
| c/o Hon. Alberto Gonzalez<br>Attorney General of the United States<br>Department of Justice<br>10th and Constitutional Avenues, N.W.<br>Washington, D.C.  20530, | ) ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| vs. | ) ) | **AMENDED COMPLAINT** |
| KINDRED HEALTHCARE, INC. | ) ) | **FILED UNDER SEAL** |
| Serve:  CT Corporation System<br>Kentucky Home Life Building<br>219 South Fifth Street<br>Louisville, Kentucky  40202, | ) ) ) ) ) | |
| Defendant | ) ) | |

The Relator, Angela D. Setzer, for her Complaint states as follows:

I.     Introduction

1.     This is an action to recover damages, civil penalties, and other relief on behalf of

the United States and herself by *qui tam* Relator, Angela D. Setzer ("the Relator").   The

allegations set forth in this Complaint arise from false statements and claims made by the

34

defendant Kindred Healthcare, Inc., its agents and subsidiaries, regarding providing certain health care equipment paid for or reimbursed by the United States in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, as amended ("the FCA"). The equipment consists of, among other things, specialty beds, mattresses, and related durable medical equipment, the rental cost for which was falsely billed for the purpose of obtaining payment or reimbursement from the United States to which the defendant was not entitled under provisions of, among other things, the Social Security Act of 1965, Public Law 89-97, Title XVIII, The Health Insurance for the Aged and Disabled, 42 U.S.C. §§ 1395, *et seq.*, as amended. ("the Medicare Program" and "the Medicaid Program").

2.      The false statements made to the United States and/or its agents were that certain equipment in the above categories were "supplies" and "miscellaneous items" and were properly billable and payable, or reimbursable, under either Part A or Part B of the Medicare Program, or under the Medicaid Program, when in fact they were not properly billable or recoverable from the United States.

3.      The defendant made further false statements to the United States that the equipment was medically necessary and properly documented, when in many cases the equipment was not authorized by a physician, or there was not proper documentation showing the medical necessity of the equipment.

4.      In addition, the defendant violated the False Claims Act by certifying to the United States that it was acting in conformity with the law, including in conformity with the Anti-Kickback and Stark Laws.   In reality, the defendant violated these laws by giving physicians items of value to encourage referrals from those physicians.

5.     Finally, the defendant violated the False Claims Act by certifying to the United States that it was acting in compliance with a Corporate Integrity Agreement, which it entered as a condition of its settlement of prior violations of the False Claims Act.

## II.     Jurisdiction and Venue

6.     This action arises under the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*

7.     There was not, prior to the filing of the Complaint in this case, any "public disclosure" as that term is defined in the False Claims Act, 31 U.S.C. § U.S.C. 3730(e)(4)(A), of any of the false claims or false documents which are subjects of this action.

8.     The Relator has direct and independent knowledge of the allegations set out in this Complaint.  Relator voluntarily provides all such information, together with supporting documentation, to the United States simultaneously with filing this false claims action.  Relator, therefore, is the "original source" as that term is used in the False Claims Act, 31 U.S.C. § 3730(e)(4)(B).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332, which specifically confer jurisdiction in this court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

10.     Venue is proper in this court with respect to all parties pursuant to 28 U.S.C. § 1391(b-c) and 31 U.S.C. § 3732(a) because the defendant transacts business in the Western District of Kentucky, Louisville Division, The defendant employed Relator in this District and Division, and the violations of 31 U.S.C. § 3729 described herein occurred at least in part within this District.

### III.   Parties

11.     Angela D. Setzer ("the Relator") is a resident of Louisville, Kentucky, and is a former employee of The defendant who worked at The defendant's principal office located at Louisville, Kentucky.  The Relator brings this action for violations of 31 U.S.C. §§ 3729, *et seq.*, on behalf of herself and the United States pursuant to 31 U.S.C. § 3703(b)(1).  The Relator is a certified public accountant who reviewed or audited records and information relating to the claims made herein and thereby has personal knowledge of false records, statements, and claims presented to the United States by and for the defendant.

12.     The defendant, formerly known as Vencor Healthcare Inc., is a Delaware corporation which, during the relevant time period herein, transacted business in the Western District of Kentucky and had its headquarters and principal place of business in Louisville, Jefferson County, Kentucky.  This Court has personal jurisdiction over the defendant pursuant to 31 U.S.C. § 3732(a).

### IV.   Fed R. Civ. P. 9(b) Allegations

13.     Some of the factual information necessary to prove the allegations set out herein is in the exclusive possession or control of either the defendant or the United States.

14.     The Relator does not have access to all information regarding all of the specific claims and billings that the defendant submitted to the United States or that were actually paid by the United States.  However, upon information and belief, the defendant by and through its agents and subsidiaries made false claims for payment and reimbursement by the United States through the Medicare Program and the Medicaid Program for the rental of various items of durable medical equipment generally referred to as specialty beds and related equipment by

disguising and falsely describing such items as "supplies" and/or "miscellaneous items" so that the United States would be misled into believing these items were properly payable.

15.    Further, upon information and belief, the defendant misled the United States, and in reliance on the defendant's false statements and billings the United States has paid or reimbursed the defendant for the rental cost of specialty beds and related accessories and other durable medical equipment by paying the defendant amounts to which the defendant was not entitled.

16.    The fraud, abuse, and false claims alleged in this Complaint are so pervasive and have taken place over such a long period of time that it is unnecessary and impractical to attempt here to set out complete details as to each and every related act.

17.    The defendant has engaged in the above described activities with the intent and effect of disguising and concealing the true nature of items for which it falsely billed and of preventing discovery and investigation of its false claims, including falsifying records.

18.    Each assertion herein that an allegation is made upon information and belief identified a situation in which the Relator has, based on her knowledge, a reasoned factual basis to believe the allegation but lacks complete factual knowledge of it.

## V.    Factual Allegations

A.    False Claims and Billings:  An Overview

19.    The Medicare Program is a federally funded program providing, among other things, health and hospital insurance for persons who are sixty-five years and older.  Coverage under the Medicare Program is restricted to reasonable and medically necessary treatment in a hospital.  As heretofore stated in this Complaint, the defendant, headquartered in Louisville,

Kentucky, operates, manages, and maintains approximately 73 acute care hospitals throughout the United States.

20.     The Medicare Program is administered by the Centers for Medicare and Medicaid Services ("the Centers"), an agency within the United States Department of Health and Human Services ("the Department").   The Centers are located in ten regional offices throughout the United States and contracts with and works with the various Fiscal Intermediaries.   Prior to mid-July 2001, the Medicare Program was administered by the Health Care Financing Administration.   The Relator states that false claims and billings, which are the subjects of this Complaint, occurred both prior to this change in administration of the Medicare Program subsequent to such transfer.

21.     The Medicare Program, since its inception, has contracted with and utilized private insurance companies, known as a Fiscal Intermediaries, as agents to administer certain aspects of the Medicare Program.   A Fiscal Intermediary, pursuant to the contractual arrangements with the Centers, pays "providers," hospitals, skilled nursing facilities, and home health agencies pursuant to the Medicare Program's Part A and Part B components.

22.     The Medicare Program consists of a number of components, including Hospital Insurance ("Part A"); and Supplemental Insurance ("Part B").

23.     Medicare, Part A pays or reimburses the health care provider a portion of the charges for inpatient hospital services, skilled nursing facility services, certain home health services, and hospice-type care.   Basically, Part A provides insurance for covered inpatient hospital and related post-hospital services furnished by a provider, such as the defendant.   42 U.S.C. §§ 1395c, 1395(d)(a)(3), 1395x(m), 1395x(o).   An inpatient is charged for the general use of, among other things, a hospital bed, and the health care provider, such as the defendant,

receives a contributory payment under Part A, best described as "room and board" billable under Part A, which includes the inpatient's room bed.

24.     Medicare, Part B pays or reimburses a portion of charges for doctor services, outpatient hospital services, certain home health care services, medical equipment and supplies, and other health services and supplies.  Inpatients may utilize the Part B supplemental insurance to cover the cost of some inpatient services only if such services are covered under Part B.  The rental costs of specialty beds, related accessories, and other durable medical equipment are not covered under the Part B supplemental insurance relative to inpatient usage.   Part B reimbursements for costs relating to inpatients, although covering certain supplies and services not covered by Part A, do not cover payment for durable medical equipment such as specialty beds and related accessories when provided at an acute care hospital.

25.     The Fiscal Intermediary review submissions from and approves payment and/or reimbursement to providers such as the defendant on behalf of the United States.  The Relator does not have documentation in Relator's possession of agreements, billings, payments, reports, and correspondence between the defendant, or the defendant's subsidiary hospitals, and the various Fiscal Intermediaries utilized by the defendant.  Nevertheless, such information exists as it is required by the Medicare Program.  This documentation includes, but is not limited to, annual hospital cost reports and required certifications by the defendant (stating that the billings submitted were made in compliance with the Medicare Program's laws and regulations).  Further, Relator states that the United States has access to documentation, such as reviews of prior history existing between the defendant and each Fiscal Intermediary, audit reports, correspondence, notices of program reimbursements, the aforesaid certifications, and similar

documentation which will assist in demonstrating the practice of false billings and false claims made by the defendant.

B.    The Kindred Billing System

26.    The defendant has submitted for payment, or reimbursement, by the United States, false claims in connection generally with acute care services provided by the defendant and its subordinate hospitals under the Medicare Program and the Medicaid Program.

27.    During all times relevant to this action, through and including the present time for some subsidiary hospitals of the defendant, when a patient was admitted to one of the defendant's acute care hospitals for inpatient services under the Medicare Program, the individual's personal and medical ("clinical") date was immediately entered into a local computer utilizing a software package known as the Protouch System ("Protouch").  As each medical item was provided or service was rendered to a patient, a hospital employee made an entry in Protouch.  Thus, any service or item provided to the patient was entered into Protouch, and each service or item carried a unique numerical designation or mnemonic code number.

28.    On a daily basis, the defendant's hospitals compiled and transferred the clinical data on each patient, items provided and/or services provided, and submitted it for use by the billing system.

29.    The numerical designation for any service or item is reflected in what is known as the "ChargeMaster" or "Meditech ChargeMaster" for each Kindred-affiliated hospital.  The numerical designations for items and services on the ChargeMaster are commonly used throughout the medical industry and by the Medicare Program and the Medicaid Program.

30.    Each ChargeMaster utilized by the defendant and its subsidiary hospitals is programmed to charge fixed amounts for equipment, services, and supplies for the purpose of

billing for eventual payment and/or reimbursement pursuant to the provisions of the United States programs set out above.

31.     Upon information and belief, the defendant approximately seven years ago instructed each of its subsidiary hospitals to modify their respective ChargeMasters so that they would bill the Medicare Program for the rental cost of specialty beds, related accessories, and other durable medical equipment, disguising such equipment under the general category label of "supplies" and "miscellaneous."

32.     A specialty bed is designated durable medical equipment and is covered under Part A only if they are "ordinarily furnished" to inpatients, 42 C.F.R. § 409.14, and if they are authorized by a physician.  A specialty bed is covered under Part B only for use in a patient's home and provided certain preconditions are met, including authorization by a physician.  The defendant falsely charged the Medicare Program for this equipment by placing and hiding the charge for the rental of specialty beds, related accessories, and other durable medical equipment in the categories of "general supplies" and "miscellaneous," thereby wrongfully obtaining reimbursement for such items pursuant to both Part A and Part B components of the Medicare Program.

33.     The defendant, and its subsidiaries, for over six years, have fraudulently sought and received payment from the Medicare Program by submitting billings for the rental of specialty beds, related accessories, and other durable medical equipment, by lumping them together with and disguising such equipment in the general categories of "supplies" and "miscellaneous" in order to be paid for this equipment under the Medicare Program's Part A or Part B components.

C.    The Relator's Investigation

34.    The Relator primarily focused on specialty beds, related accessories, and other durable medical equipment revenue received from the Medicare Program by the defendant's hospitals for the nine month time period from January through September 2003, in a review she was asked to conduct while still employed by the defendant.  Relator determined that the defendant had submitted approximately 262,000 payment claims for this nine month period.  In view of time constraints, the Relator narrowed her review to 92,153 claims for payment totaling around $8.5 million.  Of these 92,153 claims, the defendant submitted 56,958 claims for payment by the Medicare Program for approximately $5.2 million for specialty beds and related equipment disguised as "supplies."  Furthermore, Relator determined that this practice had been ongoing for at least six years prior thereto.

35.    As a result, neither the United States nor the Fiscal Intermediaries engaged to review Kindred's claims for payment detected this deceitful practice from the documentation prepared and submitted by the defendant and its agents.  These billings for "supplies" and "Miscellaneous" charges for the rental cost of specialty beds, and related accessories, and other durable medical equipment are not compensable under either Part A or Part B of the Medicare Program.  Relator further states upon information and belief that the defendant has engaged in similar practices in connection with the billing associated with the Medicaid Program, and possibly other federal programs.

36.    Relator was able to track the charges for specialty beds, related accessories, and other durable medical equipment by patient, hospital, and date for the nine month period which was the subject of a review conducted by Relator in the course of her employment (i.e., January

through September, 2003) by utilizing the above described systems and medical documentation prepared and maintained by the defendant.

37.     Relator found the charges occurred at almost all of the defendant's hospitals.

38.     By its actions, and by and through the acts and omissions of its officers, agents, and employees, the defendant knowingly made or caused to be made false records or statements to obtain payment and/or reimbursement from the United States.

39.     The defendant, its officers, agents, and employees, failed to address and correct this system of improper billing of durable medical equipment even when repeatedly brought to their attention by this Relator.

40.     In addition, Relator discovered that the great majority of claims had not been authorized by a physician, or documented appropriately to demonstrate the medical necessity of the equipment for the patient, even if it had been properly billable.

D.     The Anti-Kickback and Stark Law Violations

41.     The defendant operates SleepCor, a wholly-owned subsidiary based in Roswell, Georgia.   SleepCor earns revenue by conducting sleep studies for patients who are having difficulty sleeping.

42.     Federal law prohibits physicians from referring Medicare patients to an entity for the furnishing of healthcare services if the physician has a financial relationship (through ownership, investment or a compensation arrangement with the entity), unless the relationship meets an enumerated exception.   Federal law also prohibits financial relationships between hospitals and physicians involving payments made knowingly and willfully for or to induce referrals to the hospital or other medical provider.

43.     In addition, federal law prohibits the defendant from offering or providing physicians anything of value to induce referrals.

44.     Despite the requirements of federal law, the defendant has violated these provisions by doing the following:

a.     providing equipment rental and office space to physicians, without collecting the required payments, or putting measures into place to ensure the payments were made;

b.     paying physicians for services as medical directors of their facilities under sham contracts requiring the physicians to work required numbers of hours, without requiring the physicians to work those hours, and without putting measures into place to ensure the hours were worked;

c.     permitting physicians to submit fraudulent timesheets, in that they did not accurately reflect the hours worked by the physicians, but rather were time sheets from other periods with the dates altered;

d.     paying for entertainment expenses of physicians though the expense accounts of the defendant's managers;

e.     referring SleepCor patients to a related company to purchase durable medical equipment.

These activities occurred at the defendant's facilities in Texas, among other places, and during the period the Relator worked for the defendant, among other times.

E.     Violation of the Corporate Integrity Agreement

45.     The United States has previously intervened in actions brought against the defendant, then called Vencor, Inc., for violation of the False Claims Act. The Complaint alleged Kindred, along with certain subsidiaries and related companies, had submitted false billings and other claims to the United States. Kindred entered a settlement agreement with the United States, which provided for Vencor and a related company, Ventas, to pay the United

States over $110 million in damages for the false claims it had made. The settlement agreement also required the defendant to enter a Corporate Integrity Agreement.

46.     The defendant entered into a Corporate Integrity Agreement with the Office of the Inspector General of the U.S. Department of Health and Human Services to promote compliance with the requirements of Medicare, Medicaid and all other federal healthcare programs. Under the Corporate Integrity Agreement, the defendant was required to implement a comprehensive internal quality improvement program and a system of internal financial controls in its nursing centers, hospitals, pharmacies and regional and corporate offices.

47.     The Corporate Integrity Agreement includes compliance requirements which obligate Kindred to:

a.      adopt and implement written standards on federal healthcare program requirements with respect to financial and quality of care issues.

b.      conduct training each year for all employees to promote compliance with federal healthcare requirements, and to operate an internal compliance hotline.

c.      put in place a comprehensive internal quality improvement program, includin establishing committees at the facility, regional and corporate levels to review quality-related data, direct quality improvement activities and implement and monitor corrective action plans.

d.      enhance its system of internal financial controls to promote compliance with federal healthcare program requirements on billing and related financial issues, including a variety of internal audit and compliance reviews.

The defendant was required to evaluate the integrity and effectiveness of its internal systems and to annually report its findings to the Office of the Inspector General. The defendant was also required to notify the Office of the Inspector General within thirty days of its discovery of any ongoing investigation or legal proceeding conducted or brought by a governmental entity or its

agents involving any allegation that the defendant has committed a crime or engaged in a fraudulent activity.

48.     The defendant was also required to notify the Office of the Inspector General within thirty days of its determination that it had received a substantial overpayment relating to any federal healthcare program or any other matter that a reasonable person would consider a potential violation of the federal fraud and abuse laws or other criminal or civil laws related to any federal healthcare program.

49.     Despite these obligations, the defendant has violated the Corporate Integrity Agreement by failing to establish and carryout a program for performing internal audits and reviews of billing policies and procedures.  Because of these failures, the defendant's internal audit staff was discouraged from auditing billing and reimbursement issues, self-referral and Stark issues at the SleepCor subsidiary, and other issues necessary to ensure the defendant was appropriately implementing the Corporate Integrity Agreement and otherwise meeting its obligations under applicable law.

## VI.   Claims for Relief

### Count I
### False Claims Relating to the Medicare Program

50.     Relator repeats and realleges the above allegations as if fully repeated herein.

51.     The defendant has long had and currently has a relationship with the United States for payment or reimbursement of charges incurred for providing health care equipment in conjunction with the Medicare Program.

51.     The defendant by and through its subsidiary hospitals and/or other facilities under its supervision, direction, or control submitted billings to the United States for its agents for

payment or reimbursement for the rental cost of specialty beds, mattresses, similarly related items, and other durable medical equipment which were not properly billed or payable under the provisions of Part A or Part B of the Medicare Program.

52.     The above items were improperly charged and billed to the United States by the defendant falsely grouping durable medical equipment charges under the category of "supplies" or "miscellaneous" in order to deceive the United States into believing the items charged were properly billable and payable under Parts A and B of the Medicare Program.

53.     Moreover, the above items were charged and billed to the United States by the defendant even though they were not authorized by a physician, or there was not sufficient documentation to demonstrate their medical necessity.

54.     The defendant has followed the above described practiced of billing specialty beds and related durable medical equipment as "supplies" not only in regard to the Medicare Program, but also with regard to all parties it bills, whether government or private.

55.     The United States has been damaged as a result of the defendant's violations of the False Claims Act arising under 31 U.S.C. §§ 3729(a)(1, 2, and 7).

56.     The defendant's knowing violations of 31 U.S.C. §§ 3729 have damaged the United States in an amount to be determined at trial.

Count II
False Claims Relating to the Medicaid Program

57.     Relator repeats and realleges the above allegations as if fully repeated herein.

58.     The Medicaid Program provides medical health insurance to contribute toward the cost of health care for certain eligible individuals and families with limited income and

resources. The Medicaid Program is a joint venture between the United States and the various State governments.

59.  States have established individual medical programs. These state-operated medical programs must abide by the laws, rules, and regulations of the United States' Medicaid Program as a condition precedent for receiving the United States' contribution towards its share of the medical expenditures. The share paid by the United States is known as the "Federal Medical Assistance Percentage."

60.  The defendant has long had and currently has a relationship with the United States for payment or reimbursement of charges incurred for providing health care equipment in conjunction with the Medicaid Program.

61.  The defendant by and through its subsidiary hospitals and/or other facilities under its supervision, direction, or control submitted billings for payment or reimbursement for the rental cost of specialty beds, mattresses, similarly related items, and other durable medical equipment which were not payable under the provisions of the Medicaid Program.

62.  Moreover, the above items were charged and billed to the United States by the defendant even though they were not authorized by a physician, or there was not sufficient documentation to demonstrate their medical necessity.

63.  The above items were improperly charged and billed by the defendant in continuation of the above-state practice of falsely grouping specialty beds and other durable medical equipment charges under the category of "supplies" or "miscellaneous" in order to deceive, among others, the United States into believing the items charged were properly billable and payable under the Medicaid Program.

64.     The United States has been damaged as a result of the defendant's violations of the False Claims Act arising under 31 U.S.C. §§ 3729(a)(1, 2, and 7).

65.     The defendant's knowing violations of 31 U.S.C. §§ 3729 have damaged the United States in an amount to be determined at trial.

## Count III
### False Claims Relating to Other Federal Programs

66.     Relator repeats and realleges the above allegations as if fully repeated herein.

67.     Relator states upon information and belief that the defendant regularly bills in the above manner for specialty beds, related accessories, and other durable medical equipment and that the defendant, therefore, may have submitted other false claims to the United States under other federal programs not specifically set forth in this Complaint. The Relator states that the practice described above in connection with disguising specialty beds and other durable medical equipment in a general supply category or code number, and billing accordingly, is a practice applied and utilized by the defendant in regard to all customers, private, state and federal.

68.     Although Relator only specifically reviewed the Medicare Program billing requirements in her internal review, upon information and belief the deceitful billing practices described above because they are followed by the defendant for all its billings would and could affect other the defendant's United States customers, to the extent the defendant is involved with other federal customers. To the extent that other United States programs prohibit such billing practices and payments, i.e., seeking to recover and recovering from the United States the rental cost of specialty beds and related items, this Relator includes those United States customers in her *qui tam* cause of action.

69.     The United States has been damaged as a result of the defendant's violations of the False Claims Act arising under 31 U.S.C. §§ 3729(a)(1, 2, and 7).

70.     The defendant's knowing violations of 31 U.S.C. §§ 3729 have damaged the United States in an amount to be determined at trial.

Count IV
### False Claims Relating to Violation of the Anti-Kickback and Stark Laws

71.     Relator repeats and realleges the above allegations as if fully repeated herein.

72.     Section 1877 of the Social Security Act, commonly known as "Stark I," states that a physician who has a financial relationship with a clinical laboratory generally is prohibited from referring patients to that laboratory.  The Omnibus Budget Reconciliation Act of 1993 contains provisions, commonly known as "Stark II," amending Section 1877 to expand greatly the scope of Stark I.  Effective January 1995, Stark II broadened the referral limitations of Stark I to include, among other designated health services, inpatient and outpatient hospital services.  Under Stark I and Stark II, a "financial relationship" is defined as an ownership interest or a compensation arrangement.  If such a financial relationship exists, the entity generally is prohibited from claiming payment for services under the Medicare or Medicaid programs.  Moreover, an entity may not refer patients to related entities.

73.     In addition, Section 1320a-7b of Title 42, United States Code, prohibits the defendant from providing any remuneration to induce or reward referrals or the ordering of goods or services.

74.     Under these laws, the defendant may not pay physicians, or fail to collect payments due from physicians, to encourage physicians to refer patients to its facilities or to reward physicians for referring patients to its facilities.

75.     Despite these restrictions, the defendant has violated these provisions by doing the following:

   a.     providing equipment rental and office space to physicians, without collecting the required payments, or putting measures into place to ensure the payments were made;

   b.     paying physicians for services as medical directors of their facilities under sham contracts requiring the physicians to work required numbers of hours, without requiring the physicians to work those hours, and without putting measures into place to ensure the hours were worked;

   c.     permitting physicians to submit fraudulent timesheets, in that they did not accurately reflect the hours worked by the physicians, but rather were time sheets from other periods with the dates altered;

   d.     paying for entertainment expenses of physicians though the expense accounts of the defendant's managers;

   e.     referring SleepCor patients to a related company to purchase durable medical equipment.

76.     Despite these violations, the defendant has falsely certified to the United States that it is in full compliance with the law, including the Anti-Kickback and Stark Laws.

77.     The United States has been damaged as a result of the defendant's violations of the False Claims Act arising under 31 U.S.C. §§ 3729(a)(1, 2, and 7).

78.     The defendant's knowing violations of 31 U.S.C. §§ 3729 have damaged the United States in an amount to be determined at trial.

Count V

False Claims Relating to Violation of the Corporate Integrity Agreement

79.     Relator repeats and realleges the above allegations as if fully repeated herein.

80.     Because of its prior violation of the False Claims Act, the defendant entered a Corporate Integrity Agreement with the United States, requiring it to take specified measures to ensure its compliance with federal law.

19

81.    The Corporate Integrity Agreement requires the defendant to report its compliance to the Office of the Inspector General of the U.S. Department of Health and Human Services.

82.    The defendant's reports have contained false and insufficient information, in that they failed to disclose the defendant had violated the requirement of establishing and implementing a program of internal audits of cost reports, claims, and billing policies and procedures, as well as implementing a program for auditing SleepCor to prevent self-referrals or violation of the Anti-Kickback and Stark laws.

83.    The United States has been damaged as a result of the defendant's violations of the False Claims Act arising under 31 U.S.C. §§ 3729(a)(1, 2, and 7).

84.    The defendant's knowing violations of 31 U.S.C. §§ 3729 have damaged the United States in an amount to be determined at trial.

## VII. Request for Relief

WHEREFORE, the Relator requests the following relief:

1.    That the Court enter judgment against the defendant in an amount equal to three times the amount of damages the United States Government sustained because of defendant's actions, a civil penalty of $10,000 for each false claim made on or before September 28, 1999, and $11,000 for each false claim made on or after September 29, 1999, together with the costs of this action, with interest, including the cost to the United States Government for its expenses related to this action.

2.    That the Relator, Angela D. Setzer, be awarded all costs incurred by her, including her attorney fees.

3.      That in the event the United States intervenes in this action, the Relator be awarded 25 percent of the proceeds of this action or settlement of the claims.

4.      That in the event the United States does not intervene in this action, the Relator be awarded 30 percent of the proceeds of this action or settlement of the claims.

5.      That the Relator and the United States be awarded pre-judgment and post-judgment interest.

6.      For trial by jury on all issues so triable.

7.      For any and all other relief to which the United States and the Relator may appear entitled.


Respectfully submitted,


Kent Wicker
Reed Wicker PLLC
2100 Waterfront Plaza
321 West Main Street
Louisville, Kentucky  40202
(502) 572-2500

ATTORNEY FOR RELATOR